UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHNNY NAILS                                :
                                          :
      v.                          :      Case No. 3:07-cv-1017 (SRU)
                                          :
SHARRON LAPLANTE, et al.          :

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Johnny Nails, currently confined at the Osborn Correctional Institution in Somers,

Connecticut, commenced this civil rights action *pro se* pursuant to 28 U.S.C. § 1915.  Nails

alleges that the defendants, Drs. Sharron Laplante and James McKenna, were deliberately

indifferent to his medical needs and violated his rights under the Americans with Disabilities

Act.  Defendants have filed a motion for summary judgment.  For the reasons that follow,

defendants' motion is granted.

**I.       Standard of Review**

The burden is on the party moving for summary judgment to establish that there are no

genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.

*See* Rule 56(c)),  Fed. R. Civ. P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The moving party may satisfy that burden "by showing – that is pointing out to the district court

– that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v.

Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and

citations omitted).

A court may grant summary judgment only "'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact.'" *Miner v. Glen Falls*, 999 F.2d 655, 661 (2d Cir. 1993)

(citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson*, 477 U.S. at 248), *cert. denied*, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, "the non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture."  *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (quotations and citations omitted).  Thus, "'[t]he mere existence of a scintilla of evidence in support of the [plaintiffs'] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiffs]."  *Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004) (quoting *Anderson*, 477 U.S. at 252).

The court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Patterson v. County of Oneida, NY*, 375 F.3d 206, 218 (2d Cir. 2004).  If, "'as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'"  *Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004) (quoting *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally

and interprets them to raise the strongest arguments suggested therein. *See Burgos v. Hopkins*,

14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal interpretation, however, a "bald assertion,"

unsupported by evidence, cannot overcome a properly supported motion for summary judgment.

*Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## II.    Facts[1]

Nails was confined at Hartford Correctional Center ("HCC") from June 21, 2004, through

December 7, 2005.  During this time, defendants Laplante and McKenna were staff physicians at

HCC.

During the health intake screening upon his arrival at HCC, Nails told the nurse that he

had undergone heart surgery a few months earlier at Hartford Hospital.  Four stents were inserted

in occluded vessels.  Nails told the nurse that he thought he was taking aspirin and Coumadin.

The nurse referred Nails for examination by a physician.

Dr. Laplante saw Nails the following day.  Nails again stated that he was taking aspirin

and Coumadin, but did not know the dosages.  After considering his medical history and reported

---

[1] The facts are taken from Defendants' Local Rule 56(a)1 Statement [Doc. #13-3] and
attached affidavits.  Local Rule 56(a)2 requires the party opposing summary judgment to submit
a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to
the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the
facts set forth by the moving party.  Each admission or denial must include a citation to an
affidavit or other admissible evidence.  In addition, the opposing party must submit a list of
disputed factual issues. *See* D. Conn. L. Civ. R. 56(a)2 & 56(a)3.  With their motion for
summary judgment, defendants filed a Notice to Pro Se Litigant [Doc. #13-4] informing Nails of
his obligation to respond to the motion for summary judgment and of the contents of a proper
response.
      Nails neither filed a response nor sought an extension of time within which to do so.
Accordingly, defendants' facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("All
material facts set forth in said statement will be deemed admitted unless controverted by the
statement required to be served by the opposing party in accordance with Rule 56(a)2.").

medications, Dr. Laplante prescribed aspirin and Coumadin.  She ordered an EKG and weekly

lab tests to monitor the effectiveness of the medication and asked the nurse to obtain Nails'

records from Hartford Hospital.  The EKG, performed on June 22, 2004, was essentially normal.

After reviewing the initial lab tests, Dr. Laplante adjusted the medication dosage.  She continued

to review the weekly test results and adjust Nails' medication as required during his confinement

at HCC.

On August 31, 2004, Dr. McKenna saw Nails in response to a complaint of continuing

chest pain.  Nails described the pain as a stabbing pain in the anterior chest lasting a few seconds.

He stated that the pain did not radiate and was not related to exertion.  Rather, the pain occurred

when he was under stress.  Dr. McKenna's physical examination of Nails was negative.  Based

on Nails' description of the pain, the physical examination, the EKG on file and the periodic lab

reports, Dr. McKenna concluded that the pain was caused by stress and that no further medical

treatment was needed.  Dr. McKenna did not see Nails again, because he was under the care of

Dr. Laplante.

Despite Nails' allegations of repeated complaints of chest pain and shortness of breath,

medical records document only two other medical complaints.  On September 15, 2004, Nails

reported blood in his stool.  Dr. Laplante ordered tests, all of which were negative for fecal

blood.  On September 10, 2005, Nails told his psychiatrist that he experiences chest pain and

shortness of breath.  Although the psychiatrist advised Nails to consult his physician, medical

records show no request for medical examination following that meeting.  Medical records

indicate that Nails' coronary condition has remained fairly stable during his incarceration.

### III.    Discussion

Nails asserts two claims in this action, deliberate indifference to his serious medical need

and violation of his rights under Title II of the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12132.  Defendants argue that they have not violated any of Nails' constitutionally or

federally protected rights.

### A.       Deliberate Indifference to Serious Medical Need

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes

cruel and unusual punishment in violation of the Eighth Amendment.[2]  *Estelle v. Gamble*, 429

U.S. 97, 104 (1976).  To prevail on such a claim, Nails must provide evidence of sufficiently

harmful acts or omissions and intent to either deny or unreasonably delay access to needed

medical care or the wanton infliction of unnecessary pain by prison personnel.  *Id.* at 104-06.

Mere negligence will not support a section 1983 claim; "the Eighth Amendment is not a

vehicle for bringing medical malpractice claims, nor a substitute for state tort law."  *Smith v.*

*Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).  Thus, "not every lapse in prison medical care will

rise to the level of a constitutional violation," *id.*; rather, the conduct complained of must "shock

---

[2] Nails was admitted to HCC on June 21, 2004.  He was not sentenced until October 21,
2005.  *See* www.ctinmateinfo.state.ct.us.  Thus, for much of the time encompassed by this action,
Nails was a pretrial detainee.  While a pretrial detainee, Nails' claims are properly analyzed
under the Due Process Clause of the Fourteenth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520,
535 n.16 (1979); *Bryant v. Maffucci*, 923 F.2d 979, 983 (2d Cir. 1991).  The standard for alleging
a due process violation grounded in the denial of adequate health care may be less rigorous than
the Eighth Amendment standard.  *See Bryant*, 923 F.2d at 983 ("Although a pretrial detainee's
due process rights to adequate medical treatment are at least as great as the Eighth Amendment
protections available to prison inmates, the Supreme Court has left unresolved what standard
applies." (citation omitted)).  However, courts have applied the same analysis to both claims.
*See, e.g., Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) (applying Eighth Amendment
deliberate indifference test to pretrial detainee's claim under the Due Process Clause of the Fifth
Amendment).

the conscience" or constitute a "barbarous act." *McCloud v. Delaney*, 677 F. Supp. 230, 232

(S.D.N.Y. 1988) (citing *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970)).

Inmates do not have a constitutional right to the treatment of their choice. *Dean v.*

*Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Mere disagreement with prison officials about what

constitutes appropriate care does not state a claim cognizable under the Eighth Amendment. "So

long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment

does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703

(2d Cir. 1998).

There are both subjective and objective components to the deliberate indifference

standard. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom. Foote v.*

*Hathaway*, 513 U.S. 1154 (1995). Objectively, the alleged deprivation must be "sufficiently

serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[A] condition of urgency, one that may

produce death, degeneration, or extreme pain" must exist. *Hathaway v. Coughlin*, 99 F.3d 550,

553 (2d Cir. 1996) (internal quotations and citations omitted). Subjectively, the defendant must

have been actually aware of a substantial risk that the inmate would suffer serious harm as a

result of his actions or inactions. *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).

Nails has a history of coronary artery disease. Defendants do not address whether Nails'

condition is a serious medical need. Thus, for purposes of this ruling, the court assumes that

Nails has a serious medical need and addresses only the subjective component of the deliberate

indifference test.

Medical judgment usually is not sufficient to support an Eighth Amendment violation.

*See Hernandez v. Keane*, 341 F.3d 137, 146-47 (2d Cir. 2003) (summary judgment appropriate

where deliberate indifference claim relied on delay in providing risky treatment), *cert. denied*, 543 U.S. 1093 (2005).  The judgment of prison doctors is presumed valid unless the prisoner provides evidence that the decision was "such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment."  *White v. Napoleon*, 897 F.2d 103, 113 (3d Cir. 1990).

Nails disagrees with the treatment provided by the defendants.  In support of their motion for summary judgment, defendants have submitted their own affidavits explaining the treatment each provided and the affidavit of Dr. Edward Blanchette who, after reviewing Nails' medical records, opines that both defendant provided appropriate and acceptable medical care and exercised reasonable professional judgment.  Affidavit of Dr. Blanchette, Doc. #13-5, ¶¶ 11, 21. Nails has provided no evidence indicating that the medical care provided by the defendants was deficient.  Nails' disagreement over treatment is insufficient to support a claim for deliberate indifference to serious medical needs.  Accordingly, defendants' motion for summary judgment is granted with respect to the Eighth Amendment claim.

### B.      Americans with Disabilities Act

The State of Connecticut is a public entity within the meaning of the ADA.  *See* 42 U.S.C. § 12131(1)(A) (defining public entity to include any state or local government).  Nails, however, has not named the State of Connecticut as a defendant.

The Second Circuit has recognized that a valid ADA claim may be stated against a state official in his official capacity.  *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 289 (2d Cir. 2003).  Title II of the ADA, however, does not "provide[] for individual capacity suits against state officials."  *See Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107

(2d Cir. 2001).  Accordingly, Nails' ADA claim will be treated as one brought against the defendants in their official capacities.

Title II of the ADA, entitled "Public Services," provides, in relevant part: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Title II defines the term "qualified individual with a disability" as "an individual with a disability who . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

Title II abrogates a state's sovereign immunity and permits a private action for damages against the state "only for conduct that *actually* violates the Fourteenth Amendment."  *United States v. Georgia*, 546 U.S. 151, 159 (2006).  The Fourteenth Amendment incorporates the Eighth Amendment protection from cruel and unusual punishment.  *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947) (plurality opinion).  Thus, in order to state a valid ADA claim against the defendants, Nails must be able to state a valid Eighth Amendment claim against themBecause the court concluded above that Nails failed to assert a cognizable Eighth Amendment claim, his Title II claim necessarily fails.

In addition, even if Nails had stated a claim for violation of a constitutionally protected right, defendants' motion should be granted.  The Second Circuit has held that "a private suit for money damages under Title II of the ADA may only be maintained against a state [here, individual defendants in their official capacities] if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability."  *Garcia*,

280 F.3d at 111.  The court noted that plaintiff could establish discriminatory animus or ill will by a burden-shifting technique similar to that adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), or a motivating-factor analysis similar to that adopted in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252-58 (1989).  In *Garcia*, the Second Circuit affirmed the grant of summary judgment in favor of the defendants on the ADA claim because plaintiff failed to allege discriminatory animus or ill will based on his disability.  *See id.* at 112-13.  Nails does not include any non-conclusory allegations of discriminatory animus or ill will based on his disability and identifies no program he could not participate in or any service that was denied as a result of his disability.  Accordingly, Nails fails to present a cognizable ADA claim.  Defendants' motion for summary judgment is granted with respect to the ADA claim as well.

## IV.    Conclusion

Defendants' Motion for Summary Judgment [**Doc. #13**] is **GRANTED**.  The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 23rd day of January, 2009, at Bridgeport, Connecticut.


 /s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge